**KOLLER LAW LLC**
David M. Koller, Esquire (90119)
Jordan D. Santo, Esquire (320573)                             *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
(215)545-8917
(215) 575-0826 (fax)
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IKEA WELLONS**<br>656 Macbeth Drive<br>Pittsburgh, PA 15235<br>    Plaintiff,<br><br>v.<br><br>**LOUIS DEJOY, POSTMASTER GENERAL,**<br>475 L'Enfant Plaza, S.W.<br>Washington, D.C. 20260<br>    Defendant. | : : : : : : : : : : : : : : | **Complaint and Jury Demand**<br><br>2:23-cv-2023 |

# COMPLAINT

Plaintiff, Ikea Wellons (hereinafter "Plaintiff"), by and through her undersigned counsel, brings this action against Defendant, Louis DeJoy, Postmaster General, in his official capacity as the head of the U.S. Postal Service (hereinafter "Defendant" or "USPS"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended (including its amendments by the Pregnancy Discrimination Act). In support thereof, Plaintiff avers as follows:

## PARTIES

1. Plaintiff incorporates the preceding introductory paragraph as if set forth more fully at length herein.

2. Plaintiff, Ikea Wellons, is an adult individual residing at 656 Macbeth Drive, Pittsburgh, PA

15235.

3. Defendant is a federal government entity providing mail delivery services, including mail delivery services in this judicial district.

4. Defendant is headquartered at 475 L'Enfant Plaza, S.W., Washington, D.C. 20260.

5. Defendant is an employer as defined under Title VII.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment; in making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer; in so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because Defendant is an Agency of the United States Government and Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction such that it complies with the traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. Venue is properly laid in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and/or regularly conducts business in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

12. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

13. Plaintiff exhausted her administrative remedies under Title VII.

14. On or about August 16, 2018, Plaintiff requested an appointment with an Alternative Dispute Resolution ("ADR") Specialist for pre-complaint counseling; said request was assigned a pre-complaint counseling number of PRE-034856-2018 and was a complaint based on events prior to the termination of Plaintiff's employment at Defendant.

15. Subsequently, on or about September 20, 2018, Plaintiff again requested an appointment with an ADR Specialist for pre-complaint counseling; said request was assigned a pre-complaint counseling number of PRE-010510-2018 and was a complaint based on Plaintiff's termination of employment at Defendant.

16. On or about January 9, 2019, Defendant sent Plaintiff a Notice of Right to File an Individual Complaint of Discrimination (PS Form 2579-A).

17. Plaintiff filed a formal complaint of discrimination with Defendant on or about January 22, 2019.

18. On or about February 23, 2023, Defendant issued Plaintiff a Notice of Final Action.

19. On or about March 18, 2022, Plaintiff appealed Defendant's final order concerning her complaint of discrimination to the Equal Employment Opportunity Commission ("EEOC").

20. The EEOC issued an order affirming Defendant's final agency decision on or about August 24, 2023.

21. Plaintiff received notice of the decision from the EEOC via U.S. Mail.

22. Plaintiff initiates this action via Complaint within ninety (90) days of her receipt of the EEOC's decision on her appeal.

23. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

24. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

25. Plaintiff is African American.

26. Plaintiff is a woman.

27. On or about September 23, 2017, Defendant hired Plaintiff to be a City Carrier Associate (CCA) at the Penn Hills Post Office.

28. Plaintiff successfully completed her ninety (90) day probationary period with no attendance issues and performed duties assigned to her well and in a timely manner.

29. On or about June 5, 2018, Plaintiff learned she was pregnant.

30. On or about June 9, 2018, Plaintiff became a full-time employee at Defendant and Defendant converted Plaintiff to a City Carrier.

31. Roughly around the same time, Plaintiff became a Union Steward at the Penn Hills Post Office.

32. Plaintiff's change in status regarding her employment required Plaintiff to serve another ninety (90) day probationary period.

33. On or about June 27, 2018, Plaintiff began to experience concerning symptoms associated with her pregnancy which required medical attention.

34. As a result, Plaintiff had to call off of work to attend to this medical issue.

35. On or about June 28, 2018, Plaintiff presented a doctor's note with work restrictions to Christina Hart, Plaintiff's Supervisor.

36. Plaintiff's restrictions due to her pregnancy were that she could not lift items over ten (10) pounds.

37. Also, on or about June 28, 2018, Plaintiff informed Michelle Boyd, Manager at the Penn Hills Post Office Branch, that Plaintiff was pregnant.

38. Despite informing Defendant of her restrictions and pregnancy, Defendant required Plaintiff to violate these restrictions by requiring Plaintiff to carry packages over her ten (10) pound lifting restriction.

39. On or about July 5, 2018, Plaintiff was present at work.

40. Bill McGraw (Caucasian man) told Plaintiff she did not need to clock in and that he would send Plaintiff's time worked to Boyd, or words to that effect.

41. On or about July 17, 2018, Plaintiff was supposed to have a day off of work to attend a prenatal doctor's appointment.

42. Defendant gave Plaintiff late notice that Plaintiff would actually have to work that day.

43. Plaintiff was unable to attend work on or about July 17, 2018 because of the previously scheduled prenatal appointment.

44. Plaintiff requested her physician provide her with a note indicating the estimated due date for Plaintiff's pregnancy so that she could provide said note to Defendant.

45. The pregnancy due date, as estimated by Plaintiff's physician, was February 7, 2019.

46. On or about July 18, 2018, Plaintiff gave Defendant this note from her physician informing Defendant of Plaintiff's pregnancy due date.

47. On or about July 26, 2018, while out on her route, Plaintiff became aware that Postal Police had been called to escort her out of the building upon Plaintiff's return.

48. When Plaintiff returned from her route, Matt Mitchell and Erica Coleman, told Plaintiff

she was going to be fired due to not showing up to work on July 5, 2018, or words to that effect.

49. Plaintiff informed them that she did, in fact, work on July 5, 2018 and that she had been instructed by McGraw to not clock in.

50. Plaintiff asked Mitchell if he was aware Plaintiff was pregnant.

51. Mitchell denied knowledge of Plaintiff's pregnancy.

52. Upon information and belief, Mitchell's denial of knowledge of Plaintiff's pregnancy was a false statement.

53. Up until this point, Plaintiff had had no disciplinary issues, write-ups, or reprimands.

54. Instead of termination, Defendant extended Plaintiff's probationary period for an additional thirty (30) days.

55. On or about August 1, 2018, while at a lunch break with two non-pregnant co-workers (Brandon younger and Lamika Chase), Mitchell called Plaintiff and attempted to assign Plaintiff with a lifting task which would violate Plaintiff's medical restrictions due to her pregnancy.

56. Plaintiff declined the task since it would violate her lifting restrictions.

57. Approximately twenty (20) minutes later, Mitchell called Plaintiff to ask if she was still on her lunch break.

58. Mitchell did not similarly call Younger or Chase at that time who were also on break with Plaintiff.

59. Mitchell again assigned Plaintiff the lifting task which would violate her lifting restrictions.

60. Feeling pressured and left with no other choice, Plaintiff agreed to perform the lifting task.

61. On or about August 4, 2018, Defendant transferred Plaintiff to the Monroeville Office

with a scheduled start date of August 6, 2018.

62. Plaintiff suffered a miscarriage on or about August 5, 2018.

63. Upon information and belief, the harassment and stress Plaintiff faced at Defendant along with the threat of termination, contributed to Plaintiff's miscarriage.

64. Plaintiff underwent surgery and received leave to recover from her surgery from on or about August 6, 2018 through on or about August 9, 2018.

65. Plaintiff called Michael Cialone, Manager at the Monroeville Office, to inform him of her medical situation and the need for leave.

66. Plaintiff returned to work on or about August 10, 2018.

67. Despite not having fully recovered from her miscarriage and ensuing medical treatment, Defendant assigned Plaintiff to work lengthy shifts on unfamiliar new routes for Plaintiff.

68. On or about August 15, 2018 through on or about August 18, 2018, Defendant required Plaintiff to work overtime.

69. Although Defendant typically allows drivers time to get comfortable with new routes, Defendant immediately threw Plaintiff into a busy schedule after returning from her miscarriage-related leave.

70. On or about August 20, 2018, Plaintiff experienced abdominal pain while delivering on her route which required Plaintiff to go to the emergency room.

71. Plaintiff immediately informed Defendant of this need to seek medical treatment due to her abdominal pain.

72. Between on or about August 20, 2018 and on or about August 21, 2018, Plaintiff was very ill in connection with her abdominal pains.

73. Plaintiff left voice and text messages for "Nick," Plaintiff's supervisor at the time.

74. On or about August 22, 2018, Plaintiff called the Monroeville office and spoke with Joseph Martinelli, employee at Defendant.

75. Plaintiff informed Martinelli that her doctor directed Plaintiff remain off work for one more day of recovery.

76. Martinelli asked Plaintiff if she had documentation for that request, to which Plaintiff responded that she did, or words to that effect.

77. Later on that same day, on or about August 22, 2018, Paige Zimmerman, supervisor in training, called Plaintiff and informed her that Cialone instructed Zimmerman to call Plaintiff and tell Plaintiff to not come in on August 23, 2018.

78. Plaintiff learned that, according to Cialone, Plaintiff either needed to accept a separation from employment or resign from her position as the medical emergency occurred during her probationary period.

79. That same day, August 22, 2018, Plaintiff received a Notice of Separation Letter in the mail from Cialone, dated August 22, 2018, terminating her employment with Defendant.

80. Defendant's stated reason for Plaintiff's termination was its alleged right to terminate Plaintiff for any reason during her probationary period.

81. Upon information and belief, the stated reason for Plaintiff's termination was pretextual and false.

82. Others not within Plaintiff's protected classes were treated more favorably than Plaintiff.

83. By way of example and not limitation, Jason Bialek (Caucasian man), City Carrier for Penn Hills Post Office Branch, called off multiple times during his initial probationary period in or around December 2017 and was not reprimanded nor disciplined for these absences.

84. Plaintiff believes that the above demonstrates she was discriminated against due to her sex, pregnancy, and disability, as well as for engaging in the protected activity of requesting accommodations associated with her pregnancy, in violation of Title VII.

85. Plaintiff further believes that the above demonstrates she was retaliated against for requesting a reasonable accommodation for her pregnancy in violation of Title VII.

## COUNT I – RACE DISCRIMINATION
## TITLE VII

86. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

87. Plaintiff is a member of a protected class in that she is African American.

88. Plaintiff was qualified for her position and performed well.

89. Defendant treated employees outside of Plaintiff's protected class more favorably than Plaintiff.

90. Plaintiff suffered adverse employment actions as described above, including, the extension of her probationary period and termination.

91. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

92. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

93. Defendant terminated Plaintiff.

94. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – SEX/PREGNANCY DISCRIMINATION
## TITLE VII, AS AMENDED BY PDA

95. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

96. Plaintiff was a member of protected classes in that she is a woman and, at times relevant to this Complaint, was pregnant.

97. Plaintiff was qualified to perform the jobs for which she was hired.

98. Defendant treated male employees more favorably than Plaintiff.

99. Defendant treated non-pregnant employees more favorably than Plaintiff.

100. Plaintiff suffered adverse employment actions, to include but not necessarily be limited to the extension of her probationary period and termination.

101. Others outside of Plaintiff's protected classes were not disciplined nor discharged for similar alleged actions as Plaintiff.

102. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

103. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

104. Additionally, Plaintiff requested an accommodation for her pregnancy, to wit: a lifting restriction of lifting no more than ten (10) pounds.

105. Defendant failed to accommodate Plaintiff's requested accommodation when it regularly directed Plaintiff to violate her lifting restriction.

106. As a result of Defendant's sex/pregnancy discrimination, Plaintiff has suffered damages as set forth herein.

107. As a result of Defendant's failure to accommodate, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## TITLE VII, AS AMENDED BY THE PDA

108. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

109. Plaintiff engaged in protected activity under Title VII as amended by the PDA when she requested an accommodation to not lift more than ten (10) pounds due to her pregnancy.

110. Plaintiff also engaged in protected activity under Title VII as amended by the PDA when she requested time-off to attend to medical appointments associated with her pregnancy.

111. As described above, Plaintiff suffered materially adverse actions.

112. As described above, a causal connection exists between Plaintiff's engagement in protected activity and the materially adverse actions.

113. As a result of Defendant's actions, Plaintiff suffered harm, as described herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Ikea Wellons, requests that the Court grant her the following relief against Defendant:

(a) Back Pay;

(b) Front Pay;

(c) Other Compensatory damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**
**KOLLER LAW LLC**

Date: November 22, 2023     By:     */s/David M. Koller, Esq.*
David M. Koller, Esquire (90119)
Jordan D. Santo, Esquire (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
(215)545-8917
(215) 575-0826 (fax)
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com